### ADDIE SCHIGLEY v. CITY OF WASECA.[1]

November 13, 1908.

Nos. 15,754—(17).

**Municipal Corporation—Control by Legislature.**

Municipal corporations are created by the legislature as proper and convenient agencies in the work of government. Their powers, duties, and liabilities, in so far as they relate to governmental matters, are subject to legislative regulation and control.

**Liability for Defective Streets.**

The liability of a municipality to individuals for damages for injuries caused by the neglect of the municipal authorities to keep the streets in proper repair arises out of the fact that it has the exclusive control of the streets, and has the power to provide the means for the proper performance of the duty of keeping them in safe condition.

**Liability May be Conditional.**

The legislature may relieve a public corporation from such liability, or it may impose or recognize the liability upon such conditions as it thinks advisable. When conditions are thus imposed, an action cannot be maintained without showing performance of the conditions.

**Prior Notice of Defect.**

The legislature may legally provide that ten days' written notice to the city, prior to the accident, of the existence of a defect in a street or sidewalk, shall be a condition precedent to liability for damages caused thereby to individuals.

[1] Reported in 118 N. W. 259.

**Home Rule Charter.**

> The condition upon which a municipality shall be liable for damages to individuals caused by the defective condition of a street or sidewalk is a matter which belongs properly to the government of municipalities, and may be determined and regulated in a home rule charter.

Action in the district court for Waseca county to recover $800 for personal injuries alleged to have been caused by a defective sidewalk in defendant city. The charter of the city of Waseca exempts the city from liability for damages in such case, unless it shall have had written notice of the defect at least ten days before the injury. The complaint did not allege such notice. From an order, Buckham, J., sustaining defendant's demurrer to the complaint on the ground that it did not state facts sufficient to constitute a cause of action, plaintiff appealed. Affirmed.

*A. S. Maloney* and *John J. Isker,* for appellant.

*P. McGovern, for respondent.*

ELLIOTT. J.

This appeal from an order sustaining a general demurrer to the complaint in an action to recover damages for personal injuries sustained by reason of a defective sidewalk presents the question of the validity of a provision in the home rule charter of the city of Waseca, adopted in May, 1904, pursuant to chapter 238, p. 349, Laws 1903, enacted under the authority of section 36 of article 4 of the state constitution.

The complaint does not allege that written notice of the defect in the sidewalk had been given the city prior to the accident. The city charter [Section 7] provides that: "Said city shall be absolutely exempt from liability to any person for damages for injuries suffered or sustained by reason of defective streets or sidewalks within said city unless actual notice in writing of such defects in said streets or sidewalks shall have been filed with the city clerk within at least ten days before the occurrence of such injury or damage. In the absence of such notice the city shall not be liable for any injury or damage on account of such defects, and in all cases such notice shall describe with particularity the place and nature of the defects of which complaint is made." The effect of this provision is to charge the city with

liability only for accidents which occur after it has had ten days' actual written notice of the existence of the defect.

Municipal corporations, including chartered municipalities, are agencies in the work of government. They are created by the legislature, and to them it delegates certain clearly defined portions of the sovereign power. Except as restrained by constitutional provisions, these auxiliary agencies of government are under the absolute control of the legislature. Powers and duties may be imposed and taken away at the legislative will. The duty of caring for the streets and highways rests primarily upon the legislature of the state. It has, however, always been customary, as a matter of convenience and in the interest of good administration, to delegate to municipalities, counties, and townships the duty of overseeing and caring for the highways and streets within their limits. This arrangement is purely optional with the legislature.

The duty is a governmental one, and the rule is almost universal that public quasi corporations, such as counties and townships, are not liable to individuals for damages resulting from the careless and negligent manner in which the duty of caring for the highway is performed. Probably the same rule applied to chartered municipalities under the English law, and certainly such is the rule at the present time in the New England states.

But in the central and western states chartered municipalities are now held liable for damages resulting to individuals from defects in streets of which they had actual or constructive notice for such a time as to justify the conclusion of negligence. In a few states this liability is imposed by statute, while in many others it is held to exist independently of statute.

Various theories have been advanced to support this liability. Thus it has been often said that when a municipal corporation accepts a charter, by which it acquires special powers and privileges in return for its assumption of some of the duties which rest primarily upon the legislature, its relation to the legislature becomes in that respect contractual, and for the violation of the duty which it has contracted to perform it is liable for damages thereby resulting to individuals. This theory is not very satisfactory, and probably the liability might better be said to arise out of the fact that the municipality has the ex-

clusive control of the streets and highways within its limits, with power to provide means for the proper performance of the duty of keeping them in safe condition.

The liability, then, is inferred or implied from the imposition upon the corporation of duties accompanied by the power and authority necessary for the proper performance of such duties. The legislature may delegate the power over streets and highways to municipalities, or it may create a special body within the municipality and vest it with full power over the streets. Manifestly, by virtue of its plenary power over the highways and over all the agencies of government which it has created, it may properly determine whether such agencies shall or shall not be liable to individuals for damages resulting from the careless and negligent manner in which such delegated duties are performed. An individual has no right of action against the state for its failure to construct and maintain the highways in proper condition, and as against the will of the state he has no greater right against an agency of the state to which it has delegated the performance of such duties. But the state may, if it chooses, authorize a right of action if the municipality neglects the proper performance of its duties; and, as we have seen, an intention to authorize such an action is inferred when a chartered municipality is given full power of control over the streets and highways within its limits. A right of action against the municipality is thus a matter of legislative favor, and may be granted absolutely or conditionally. When it has been held to exist by implication, it may be taken away by the legislature, without violating any constitutional right of the individual. Obviously, then, the right of action may be made to depend upon compliance with certain conditions.

We are familiar with provisions which require the giving of a notice of a claim for damages which shall describe the time, place, and manner of the action, and compliance with this condition has always been held necessary to the maintenance of an action. It is also the settled rule that in an action against a municipality it is necessary for the plaintiff to show that the municipality had notice of the existence of the defect for such a time prior to the action as is necessary to make the failure to repair negligence. Ordinarily this notice may be actual or constructive, but in some instances the legislatures have

thought it advisable, in order to protect the municipalities from the results which sometimes follow the application of the doctrine of constructive notice, to provide that actual notice of the existence of the defect must be shown to have been given the municipal authorities.

The statute considered and sustained in Hurley v. Inhabitants, 88 Me. 293, 300, 34 Atl. 72, made it incumbent upon one injured by reason of a defective culvert in a highway to prove, as a condition precedent to the maintenance of an action, that the proper municipal officers of the town had twenty four hours' actual notice of the defect. A former statute had required the plaintiff to show that the town had "reasonable notice of the defect," and by the amendment "the legislature manifestly designed to prescribe a more definite requirement respecting notice and impose a more rigorous limitation upon the traveler's right to recover for an injury received." See also Rogers v. Inhabitants, 74 Me. 144; Smyth v. City, 72 Me. 249; Gurney v. Inhabitants, 93 Me. 360, 45 Atl. 310.

The statute considered in Allen v. Cook, 21 R. I. 525, 45 Atl. 148, provided that a city should not be liable for injuries to persons or property caused by snow or ice obstructing any part of its highways, unless notice in writing of the existence of the particular obstruction had been given to the surveyor of highways at least twenty four hours before the injury was caused. This statute was held to exempt the city from liability, except in cases where the notice was given as required.

In City v. Vatter, 32 Tex. Civ. App. 298, 303, 74 S. W. 806, a provision in the legislative city charter that the city should not be liable to any person for damages caused by defects in the streets unless such defect had remained for ten days after special notice in writing to the mayor or street or bridge committee was held valid. "While this provision of said charter" said the court, "may appear to be unreasonable in its sweeping and stringent restriction of the liability of the city for injuries caused by its negligence, it is plain and unambiguous in its terms, and stands as an insuperable barrier against any recovery by the plaintiff in this case, since the undisputed evidence shows that the requisite notice of the defective condition of the crossing was not given, and the unsafe condition of the crossing was not due to any affirmative act on the part of the city."

The effect of such requirements has been fully considered by the courts of New York. The statute under consideration in McNally v. City, 127 N. Y. 350, 27 N. E. 1043, provided that the city should not be liable unless actual notice of the defective condition of the street had been given to the proper authorities at least twenty four hours previous to the injury. It was held that the purpose of this statute was to prevent recovery upon constructive notice, and that there could be no recovery in any case unless the statute was complied with. See also Smith v. City, 79 Hun, 174, 29 N. Y. Supp. 539; Id., 150 N. Y. 581, 44 N. E. 1128. The question of the constitutionality of a statute requiring such notice was fully considered in MacMullen v. City, 187 N. Y. 37, 79 N. E. 863, 11 L. R. A. (N. S.) 391. It was held that the duty imposed upon a municipality to care for its streets and sidewalks is governmental, and not private or local, in its nature; that liability to individuals for the failure to properly perform the duties may be created or denied by the legislature; and that, if created, its enforcement may be surrounded by any conditions or restrictions which the legislature chooses to impose. A city charter which imposed upon the common council the duty of keeping the streets in good order, and provided that no civil action should be maintained for damages for injuries to the person sustained in consequence of the existence of snow or ice upon any sidewalk or street, unless written notice thereof relating to the particular place was actually given to the common council and there was a failure or neglect to cause such snow or ice to be removed or the place otherwise made reasonably safe within a reasonable time after the receipt of such notice, was held constitutional, as the legislature had power to provide that the liabilities should be conditional upon the notice in writing being given.

In Goddard v. City, 69 Neb. 594, 598, 96 N. W. 273, it was held that, as the liability of the city for injuries resulting from defective streets or sidewalks rests exclusively upon express or implied provisions of the statute, it was competent for the legislature to provide against such liability or create it under such conditions and limitations as it saw fit to impose. The statute which provided that cities of the first class should not be held liable for such injuries unless notice in writing of the defect had been given to the city clerk at least

five days before the accident occurred, was held not to contravene the provisions of the constitutional Bill of Rights, which guaranteed to every person a remedy for any injury done to him in his lands, goods, person, or reputation. "It was competent" said the court, "for the legislature to relieve such cities from the duty of maintaining their walks, and from all liability for injuries resulting from their unsafe condition. If the right to recover for such injuries might have been withheld entirely, one seeking to recover for such injuries certainly cannot complain of the conditions with which the legislature has seen fit to accompany the right."

It is thus clear upon principle and authority that the legislature may grant or deny to individuals a right of action against municipal corporations for injuries resulting from the negligent manner in which streets and highways are maintained. Having this power, it may grant the right of action upon any condition which it chooses to prescribe. It may therefore provide that the city shall not be liable unless it has had actual notice of the existence of the defect in the street for a designated or reasonable time before the accident. It follows that the legislature may determine the manner in which such notice shall be given, and that a general statute enacted by the legislature which contained the provision which we have quoted from the charter of the city of Waseca would be constitutional.

The question then remains whether the provision in question is one which may properly be placed in a home rule charter enacted under legislative and constitutional authority. The power to frame a city charter, which is granted by the constitution, extends to all powers properly belonging to the government of municipalities, and this necessarily includes all subjects appropriate to the orderly conduct of municipal affairs. In State v. O'Connor, 81 Minn. 79, 83 N. W. 498, and State v. District Court of Ramsey County, 87 Minn. 146, 91 N. W. 300, it was held that the constitutional provisions contemplated that the legislature should prescribe limits within which such charters may be framed; that is, prescribe limits beyond which a charter may not go. Within such restrictions the right to regulate any subject which properly relates to municipal government is secured to the people of the particular locality. In State v. District Court of St. Louis County, 90 Minn. 457, 461, 97 N. W. 132, it was

held that a provision in the charter of the city of Duluth requiring the presentation of all claims to the city council for adjustment and allowance was a proper subject for charter supervision; and "it would seem to follow logically that it was also proper to continue the subject, and provide the manner in which the determination of the city council allowing or disallowing a claim might be removed to the district court for judicial investigation and determination."

In Grant v. Berrisford, 94 Minn. 45, 101 N. W. 940, 1113, it was held that the subject of contractors' bonds to secure the performance of contracts with a city and the payment of laborers and material, including the contents of the bonds and conditions and limitations as to their enforcement, was germane to the subject of municipal legislation and superseded the provisions of the general laws on the subject. In Peterson v. City of Red Wing, 101 Minn. 62, 111 N. W. 840, it was held that the subject of notice to a municipality of claims for damages incurred by reason of defects in the streets as a condition precedent to maintaining an action therefor was relevant to the subject of municipal legislation, and that the provisions of the charter with respect to that subject superseded the general law. The principle was also applied in Turner v. Snyder, 101 Minn. 481, 112 N. W. 868, where it was held that the provisions in the charter of Crookston upon the subject of local assessments for street improvements superseded the provisions of the general law.

There can, therefore, be no serious question as to the right to insert in a municipal home rule charter a provision prescribing the conditions under which an individual may maintain an action against the city for personal injuries caused by the failure of the authorities to keep the streets and highways in proper condition. Under the common law of the state a person so injured cannot recover damages unless he can prove that the municipality had notice of the defect. He may, however, establish this essential element of his right of action by facts which charge the municipality with constructive notice. This charter changes the general rule to the extent of requiring actual notice in writing. The written notice need not, of course, have been given by the injured party. It does not relieve the city from liability in all cases, although it manifestly places a very serious obstacle in the way of the injured party. The policy of such a limitation may.

be open to serious question; but that is a matter to be determined by the legislature and the voters of the particular city. The legislature has not deemed it advisable to restrict the city in this respect, and, as the subject is clearly one proper for municipal legislation, the charter provision has the force and effect of a direct act of the legislature, and is therefore effective.

The order sustaining the demurrer is affirmed.